1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10

11   JOSEPH RUBEN MACIAS,                ) Case No. CV 13-1162 JC
                                         )
12                        Petitioner,    ) MEMORANDUM OPINION AND
                                         ) ORDER DENYING PETITION FOR
13          v.                           ) WRIT OF HABEAS CORPUS AND
                                         ) DISMISSING ACTION WITH
14   RALPH M. DIAZ, Warden,              ) PREJUDICE
                                         )
15                        Respondent.    )
     _____ )

## I.   SUMMARY

On February 15, 2013, Joseph Ruben Macias ("petitioner"), a state prisoner
proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State
Custody pursuant to 28 U.S.C. § 2254 and an attached memorandum (the
"Petition").[1]  Petitioner asserts that there was insufficient evidence to support
certain of his conviction counts and a firearm enhancement and that the trial court
gave a jury instruction which violated his constitutional rights.  On June 27, 2013,
respondent filed an Answer and a supporting memorandum ("Answer").[2]  On July
21, 2014, petitioner filed a Traverse.

---

[1]The attachment to the Petition is not paginated.  The Court herein refers to the pages of
the Petition by their filed page stamp.

[2]Respondent concurrently lodged multiple documents ("Lodged Doc.") including the
Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

1    For the reasons stated below, the Petition is  denied, and this action is

2    dismissed with prejudice.

3    **II.    PROCEDURAL HISTORY**

4        On May 6, 2009, the Los Angeles County District Attorney filed an

5    Information charging petitioner and co-defendant Jonathan Rodriguez

6    ("Rodriguez") with multiple second degree robberies of individuals working at a

7    lunch truck on or about December 21, 2008 (counts 1-3 against Rodriguez, counts

8    6-8 against petitioner), December 22, 2008 (count 9 against petitioner only), and

9    December 30, 2008 (count 10 against petitioner only), and further alleged as to

10   each such robbery that a principal personally used a firearm ("firearm

11   enhancement(s)") and that the crimes were committed for the benefit of, at the

12   direction of, or in association with a criminal street gang ("gang

13   enhancement(s)").[3]  (CT 88-93).  On January 26, 2010, a Los Angeles County

14   Superior Court jury found petitioner guilty of all five of the second degree robbery

15   counts against him (counts 6-10) and found true all of the firearm enhancement

16   and gang enhancement allegations relative to such counts.  (CT 219-23).[4]  The

17   trial court sentenced petitioner to a total of 26 years in state prison.  (CT 299-300).

18       On November 17, 2011, the California Court of Appeal affirmed the

19   judgment in a reasoned decision.  (Lodged Doc. 8).  On February 22, 2012, the

20   California Supreme Court denied review without comment.  (Lodged Doc. 11).

21   ///

22   ///

23   ────────────────

24   [3]Although the Information did not itself contain counts enumerated as count 4 or count 5,
the verdict forms supplied to jury were consecutively numbered so as to avoid jury confusion

25   such that the verdict forms for counts 6-10 reflect that they pertain to counts 4-8. (CT 88, 219-
23, 231-34).  As petitioner refers to the original count enumeration reflected in the Information

26   (see, e.g., Petition at 2), this Court does so as well.

27   [4]The jury also found Rodriguez guilty of all three of the second degree burglary counts

28   against him. (CT 224-26).

2

III.   **FACTS**[5]

At all pertinent times, Jose Mojica ("Mojica") owned a "lunch" trailer which he towed to a location in Montebello, where he cooked and sold food from 6 p.m. through 11 p.m. daily.  (RT 624-28, 636, 638).  Mojica generally worked with his nephew, Jose Cervantes ("Cervantes"), and/or his brother in law, Oswaldo Velasquez ("Velasquez").  One person would cook while the other person would sell food.  (RT 627, 716, 727, 928-29, 1030-31).  Transactions would take place via the cashier through a window to the trailer.  (RT 632).

A man robbed Mojica at gunpoint on December 22, 2008, while Mojica and Velasquez were working in the trailer.  (See RT 638-42, 672-73, 705-07 [Mojica testifying that it was Cervantes who was working with him at the time]; but see RT 949-53 [Velasquez testifying that he was present for this robbery], RT 1050 [Cervantes testifying that he did not work on December 22, 2008].  The robber asked Mojica for money while pointing a gun at Mojica's chest through one of the trailer's windows.  (RT 640-42, 671).  Mojica gave the robber money from the cash register and the robber left.  (RT 642, 676-78; but see RT 673 [Mojica testifying it was Cervantes who gave the money to the robber]).  The robber was wearing a black hoodie with the hood up and loose black pants.  (RT 642, 662, 669).

Mojica had seen this robber two or three times before – the robber had come to the trailer on prior occasions where Mojica was able to see the robber's face.  (RT 643, 645, 650, 670, 693).  Mojica identified petitioner in court as the man who robbed him on December 22, 2008, and testified that he recognized petitioner

///

///

---

[5]Since petitioner challenges the sufficiency of the evidence, the Court has independently reviewed the state court record.  See Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

1    at the time he was robbed. (RT 643-45, 714-15).[6]  Mojica had no doubt that

2    petitioner was the man who robbed him. (RT 665, 715, 726).[7]  Mojica had never

3    seen Rodriguez before. (RT 665).

4         Mojica recalled petitioner returning to the trailer and demanding money

5    some time about a week after the December 22, 2008 robbery. (RT 645-47, 705,

6    707, 724, 727).  Petitioner again demanded money through one of the trailer's

7    windows while pulling out a gun where Mojica could see it and pointing the gun

8    down. (RT 647-48, 706-07, 724; but see RT 689 [Mojica testifying that he did not

9    see the gun when petitioner demanded the money]).  Mojica was scared and gave

10   petitioner all the money Mojica had. (RT 648-49, 724).  Petitioner left in a car but

11   Mojica did not get a look at the car. (RT 648, 650; but see RT 688-89 [Mojica

12   testifying that he saw petitioner get into a Mustang after this robbery]).[8]  Mojica

13   once again recognized petitioner because petitioner had come several times to the

14   ///

---

16   [6]Mojica told investigators that the suspect (petitioner) had been to the trailer on other days
     before the last robbery and had taken food without using a gun. (RT 691-92, 712, 716-18, 727).
17   Petitioner did not pay for the food. (RT 718, 720-21).  Mojica was in fear when petitioner came
     to the trailer. (RT 722).
18

19   [7]Within two weeks of the last robbery, Mojica identified chose petitioner's photograph
     from a lineup as the person who robbed him. (RT 692-93, 713-14, 728-32).  The first time
20   Mojica was shown photographs (including one of petitioner) he could not recognize anyone. (RT
     734-36, 738).
21

22   [8]At some point after one of the robberies – Mojica was not sure which one but said it was
     the day before the last robbery (i.e., December 29, 2008) – Mojica saw petitioner getting into a
23   white Mustang and Mojica wrote down the Mustang's license plate number and provided that
     information to the police when he reported the robbery. (RT 650-51, 653-54, 658-60, 680-81,
24   688-91).  Mojica was not working and was sitting in his own car watching the trailer when he
     took down the license plate. (RT 680-84, 689-90, 728).  Mojica could see someone walk up to
25   the trailer's window then leave in the Mustang, but could not see whether the person had a gun.
     (RT 680-82).  Mojica's nephew reportedly told Mojica, "Look, they came and took our money
26   again." (RT 681).  Later, Mojica testified that one or two months after the last robbery petitioner
27   returned to the truck while Mojica was working and Mojica saw the Mustang and took down the
     license plate. (RT 707-08).

28

4

1    trailer and Mojica could see petitioner's face and recognized his voice. (RT 649).

2    Both times Mojica was robbed, petitioner was about three to four feet away from

3    Mojica. (RT 649-50). Mojica reported each robbery to the police on the day it

4    happened and police responded the same day. (RT 708-09).[9]

5         Mojica did not know whether petitioner was a gang member, but described

6    petitioner as being dressed as a "cholo," or gang member, on the day of the

7    robberies. (RT 663-64). He did not see petitioner make gang signs or use the

8    words "El Sereno." (RT 694). Mojica said he was afraid that "they" would seek

9    revenge for his reporting the robberies to the police. (RT 709).

10        Velasquez and Cervantes testified about a third robbery that took place on

11   December 21, 2008, while they were working at the trailer with David

12   Dominguez. (RT 930, 932-49, 1034-37, 1040-49; see also RT 1544-53

13   [Dominguez testifying re same]; but see RT 1587 [Dominguez stating on cross-

14   examination that the date of the robbery was December 29]). Velasquez was

15   preparing food and Cervantes was working the cash register, when a man came

16   through the window of the trailer into the trailer behind Velasquez. (RT 932-33,

17   936-37, 1035, 1041-42, 1545, 1547, 1589). According to Velasquez, the man was

18   bald with a shaven head and wearing a loose sweatshirt and baggy pants. (RT

19   946). Cervantes described the man as wearing a white shirt and baggy blue pants.

20   (RT 1045-46). Dominguez described the man as bald and wearing a black jacket

21   with blue or black oversized pants. (RT 1552, 1589). The man went to Cervantes

22   and demanded money, then went to Velasquez and Dominguez and took their

23   money and Dominguez's cell phone and left. (RT 937-40, 1042-44, 1051-52,

24   1546, 1548; but see RT 1594 [Dominguez testifying that his cell phone was not

25

26   _____

27        [9]Officer Victor Abarca testified that he responded to the trailer regarding a robbery report on December 30, 2008, and was given a license plate number by Mojica. (RT 912-14). The license plate was for a 2005 Ford Mustang registered to Theresa Angela Rodriguez at an address where defendant Rodriguez lived. (RT 915, 919, 1631, 1846).

28

1    taken]).  Velasquez thought the man in the trailer had a weapon; he felt something

2    he thought was a gun that was heavy, hard, and dull, put against his back.  (RT

3    938-39, 1000).  Cervantes saw the man in the trailer with a black 9-millimeter gun

4    in his hand.  (RT 1042, 1044).  Dominguez did not see whether the man had a

5    weapon in his hand.  (RT 1546).

6         Velasquez had a "little" opportunity to see the robber's face, which he said

7    was "somewhat" familiar because Velasquez had seen the robber once before.

8    (RT 941).  Dominguez initially said he had not seen the robber before, but then

9    said the robber looked familiar because he may have seen the robber near the

10    trailer before.  (RT 1555).  Velasquez did not identify anyone in court as the

11    robber.  (RT 941).  Cervantes and Dominguez also did not identify anyone in court

12    as the robber.  (RT 1053, 1558).

13         Velasquez , Cervantes, and Dominguez each saw another person outside the

14    trailer who came with the robber.  (RT 941, 1045, 1548-49).  Velasquez described

15    the second person as wearing a navy blue cap that said "Sereno," a sweatshirt with

16    the hood on, and baggy pants.  (RT 942-43).  Cervantes described the second

17    person as wearing black pants, a black sweatshirt, and a black cap with the words

18    "El Sereno," but could not recall if the pants were oversized.  (RT 1046-47).

19    Dominguez described the second person as wearing a blue sweatshirt, but did not

20    notice whether the sweatshirt had a hood, and did not see either robber wearing a

21    cap with the word "Sereno" on it.  (RT 1551-52, 1589).  Dominguez said the

22    person outside was bald.  (RT 1589).

23         Velasquez saw the second person holding a black gun in his hand and said

24    the person was staring at or "mad-dogging" the men in the trailer, while waving

25    his hands like saying, "hurry up."  (RT 942, 944, 1000).  Cervantes saw the second

26    person moving his hands and flashing signs from his neighborhood.  (RT 1045).

27    Dominguez could see the second person's face but did not see him doing anything

28    with his hands.  (RT 1550-51).  To Dominguez, the second man appeared to be

1  looking around.  (RT 1551).  Velasquez, Cervantes, and Dominguez were afraid.

2  (RT 942, 1045, 1547).

3      Velasquez had seen the second person about two times before the robbery

4  and had seen his face, which was familiar to Velasquez.  (RT 944).  Velasquez

5  feared the second person because he had come yelling that "this was his hood,"

6  and Velasquez thought that the person would be collecting money from the trailer

7  often.  (RT 945).  Dominguez had never seen the second person before the

8  robbery.  (RT 1555-56).  Cervantes and Dominguez both thought that the people

9  who robbed the trailer on December 21, 2008 were Cholos, or gang members.  (RT

10  1047-48, 1555).  Velasquez, Cervantes, and Dominguez did not identify anyone in

11  court as the second person.  (RT 945, 1053, 1558-59).

12      After the robbery, Velasquez saw the two men leave together in a Toyota

13  Corolla.  (RT 947, 1027; <u>see also</u> RT 1052 [Cervantes testifying that the two men

14  left together in a car but he did not recall the type of car]; RT 1552-53

15  [Dominguez testifying that he saw the two men leave together in a "little old

16  car"]).

17      Velasquez testified that the same two men returned the next day (December

18  22, 2008) and robbed the trailer.  (RT 950).  The man who entered the trailer

19  during the first robbery was the same man who robbed the trailer the next day with

20  a gun.  (RT 950-53, 1000).  The men drove away in the same Corolla.  (RT 1013-

21  14).  Cervantes was not working that day and never saw the robbers from

22  December 21, 2008 again.  (RT 1050, 1056).  Dominguez testified that he did

23  work the next day, but did not testify about a robbery that day.  (RT 1590).

24      Velasquez was in fear of retaliation when he testified.  (RT 945-46).  He

25  said that the defendants in the courtroom had been to the truck on other occasions

26  (*i.e.,* often), but were not there on December 21 or 22, 2008.  (RT 946, 954, 962,

27  ///

28  ///

985-86, 990-91, 1011).[10]  Petitioner and Rodriguez had been to the trailer on December 30, 2008.  (RT 954).  Velasquez said that petitioner and Rodriguez were used to being given food, but that day petitioner asked Mojica for food and money. (RT 955-56).  Rodriguez approached and said to give petitioner what petitioner was asking for and nothing would happen to Velasquez and Mojica.  (RT 959). Velasquez could not see whether petitioner or Rodriguez were armed.  (RT 956, 960, 995, 998, 1011, 1018-19).  Petitioner took the food and money and left with Rodriguez in a white Mustang.  (RT 957, 960, 1014, 1019).

Velasquez identified a photograph from a lineup on December 31, 2008, and another photograph on January 13, 2009, as looking like the robbers.  (RT 966-69, 974-79, 990-91, 995).  Velasquez chose petitioner's photograph, noting, "At the time [petitioner] came asking for food, we gave them [sic] to him.  But he came some other time he came asking for money, and he had a gun."  (RT 978-79, 984-85, 996-98; see also RT 1620 [police officer identifying photograph number 3 as a photograph of petitioner]). Velasquez chose Rodriguez's photograph as the person with petitioner for the December 30, 2008 robbery.  (RT 990-93). Velasquez feared retaliation when he chose the photographs.  (RT 970-71). Velasquez had no doubt that petitioner and Rodriguez were the men who robbed the trailer on December 30, 2008.  (RT 1021).

Cervantes testified that he had seen the men who robbed the trailer on December 21, 2008 before, about four times per week for three weeks prior.  (RT 1036-37, 1040).  Cervantes could see their faces and hear their voices.  (RT 1040-

///

///

---

[10]Velasquez testified that the robber who entered the trailer on December 21, 2008 had a tattoo on his neck.  (RT 999).  Cervantes could not remember if the robber had a tattoo, but told the prosecutor and police two days before he testified that the robber had a tattoo on his neck. (RT 1046, 1058).  Dominguez did not notice whether the robber who entered the trailer had tattoos or unusual features on his neck.  (RT 1589).

41).[11]   Dominguez identified photographs from two separate lineups on January 16, 2009, as looking familiar or similar to the robbers from December 21, 2008, but at trial said that the photograph of petitioner was not of the man who entered the trailer and robbed him.  (RT 1567-74, 1578-80, 1585-87, 1596-97, 1601, 1603). Dominguez noted at the time of the identification of petitioner's photograph, "I recognize number 3 because I saw him 2 times in the trailer, and he demanded food.  Two times, he didn't pay.  He intimidated all of us.  Sometimes he asked for money.  I recognize him 100 percent."  (RT 1575).  Regarding Rodriguez's photograph, Dominguez noted, "I know him because he came with number 3.  He also asked for money.  He didn't pay.  He frightened all of us.  He intimidated all of us because of his gang.  100 percent."  (RT 1579).

A gang expert testified about the El Sereno gang territory, membership, activities, identifiers and symbols, and detailed two cases where El Sereno gang members were convicted of predicate crimes.  (RT 1265-76, 1280-82, 1289-91). The expert was familiar with petitioner from prior contacts and opined that petitioner was an active gang member with the moniker "Merit," based on a purported self-admission in July of 2008, the time of the expert's contact with petitioner, petitioner's contact with other active El Sereno gang members, and the area in which petitioner had been seen.  (RT 1282-84, 1291-95, 1300-01, 1333-39).  Petitioner did not have any tattoos.  (RT 1295, 1341, 1877-78).  The expert was also familiar with Rodriguez from research rather than personal contacts, but opined that Rodriguez was an active gang member with the moniker "Little Clumsy," based on Rodriguez's gang tattoos and Rodriguez's contact with other active El Sereno gang members.  (RT 1295-96, 1302-04, 1344).  The expert

---

[11]Cervantes identified a photograph from a lineup as one of the robbers from December 21, 2008, but at trial Cervantes said it was not the man who robbed the trailer.  (RT 1056-57, 1059-61).  The Court struck from the record Cervantes's testimony about identifying anyone from a photographic lineup before trial.  (RT 1203-18 [discussion of issue with testimony outside the presence of the jury]; RT 1251-52 [admonition to jury]).

opined that the robberies charged were committed for the benefit of the gang based on the location of the trailer in an area controlled by El Sereno, the fact that neither robber attempted to cover his face and came to the trailer multiple times, and acts the expert described as efforts to instill fear and intimidation in the community and the victims.  (RT 1306-14, 1346-50).

Responding police officers James Le and Richard Contreras testified for the defense about the robberies.  (RT 1848-60).  Officer Le spoke responded on the day of the December 21, 2008 robbery and spoke with Cervantes, Velasquez, and Dominguez, who provided descriptions of the suspects.  (RT 1851).  Officer Le noted that the suspect who came inside the trailer was described as having a tattoo on the back of his neck, and the suspect who was outside the trailer was wearing a hat with "El Sereno" on it.  (RT 1851-52).  Officer Contreras responded on the day of the December 22, 2008 robbery and spoke with Mojica.  (RT 1856-57).  Mojica reportedly told Officer Contreras that the suspects on December 22, 2008 were the same suspects from the robbery the day before.  (RT 1858).

## IV.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:  (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a

///

///

///

1  decision that was based on an unreasonable determination of the facts in light of

2  the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[12]

3      In applying the foregoing standards, federal courts look to the last reasoned

4  state court decision.  See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

5  denied, 133 S. Ct. 1831 (2013).  "Where there has been one reasoned state

6  judgment rejecting a federal claim, later unexplained orders upholding that

7  judgment or rejecting the same claim rest upon the same ground."  Ylst v.

8  Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v.

9  Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148,

10  1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

11  denials of discretionary review to the last reasoned state-court decision – whether

12  those denials are on the merits or denials of discretionary review), as amended on

13  denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S. Ct. 1001

14  (2014).

15  **V.   DISCUSSION**

16      **A.   Petitioner's Insufficiency of the Evidence Claim Does Not Merit**

17            **Habeas Relief**

18      Petitioner contends that there was insufficient evidence to establish his

19  identity as one of the two perpetrators who committed the December 21 and 22,

20  2008 robberies (counts 6-9), and that the evidence was insufficient to establish

21  that a principal was armed during the December 30, 2008 robbery (i.e., the firearm

22  enhancement relative to count 10).  (Petition at 31-40; Traverse at 3).  Petitioner

23  argues that the evidence adduced at trial "did nothing more than raise a strong

24  —————————

25      [12]When a federal claim has been presented to a state court and the state court has denied

26  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence
of any indication or state-law procedural principles to the contrary.  Harrington v. Richter, 562

27  U.S. 86, 131 S. Ct. 770, 784-85 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96
(2013) (extending Richter presumption to situations in which state court opinion addresses some,

28  but not all of defendant's claims).

suspicion of [petitioner's] guilt," which purportedly "is not enough to support a conviction." (Petition at 31) (citing People v. Kunkin, 9 Cal. 3d 245, 250 (1973)).[13] Petitioner does not dispute that he committed the December 30, 2008 robbery (count 10). (Traverse at 3).

The California Court of Appeal rejected petitioner's claim on its merits on direct appeal, noting that identification by even a single eyewitness can be sufficient to prove identity, and highlighting the in-court and extrajudicial identifications for the December 21 and 22, 2008 robberies, as well as Mojica's testimony that a gun was used during the December 30, 2008 robbery. (Lodged Doc. 8 at 8-10).

This Court agrees with the Court of Appeal's analysis. Petitioner is not entitled to federal habeas relief on this claim.

### 1. Pertinent Law

On habeas corpus, the court's inquiry into the sufficiency of evidence is limited in that it is subject to two layers of judicial deference. Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam).

First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam)); see Jackson v. Virginia, 443 U.S. 307, 319 (1979) (standard of review on sufficiency of the evidence claim is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (emphasis in original). "[T]he

---

[13]Kunkin notes: "The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt." People v. Kunkin, 9 Cal. 3d at 250 (quoting People v. Mosher, 1 Cal. 3d 379, 395 (1969)).

1  only question under <u>Jackson</u> is whether [the jury's] finding was so insupportable
2  as to fall below the threshold of bare rationality." <u>Coleman</u>, 132 S. Ct. at 2065.

3        Second, on habeas review, "a federal court may not overturn a state court
4  decision rejecting a sufficiency of the evidence challenge simply because the
5  federal court disagrees with the state court. The federal court instead may do so
6  only if the state court decision was 'objectively unreasonable.'" <u>Coleman</u>, 132 S.
7  Ct. at 2062, 2065 (state court determination that jury's finding was not so
8  insupportable as to fall below the threshold of bare rationality is entitled to
9  considerable deference on habeas review) (citations omitted); <u>see</u> <u>Juan H. v. Allen</u>,
10  408 F.3d 1262, 1274-75 (9th Cir. 2005) (as amended) (on federal habeas review,
11  relief may be afforded on sufficiency of the evidence claim only if state court's
12  adjudication of such claim involved unreasonable application of <u>Jackson</u> to the
13  facts of the case), <u>cert. denied</u>, 546 U.S. 1137 (2006).[14]

14        Sufficiency of the evidence claims are judged by the elements defined by
15  state law. <u>Jackson</u>, 443 U.S. at 324 n.16. In California, a robbery conviction
16  requires proof of "the felonious taking of personal property in the possession of
17  another, from his person or immediate presence, and against his will,
18  accomplished by means of force or fear." Cal. Penal Code § 211; CALCRIM No.
19  1600; <u>People v. Scott</u>, 45 Cal. 4th 743, 749 (2009). Petitioner does not claim that
20  there was insufficient evidence to establish that Velasquez, Cervantes,
21  Dominguez, and Mojica were robbed as charged (<u>see</u> Petition at 32-33; <u>see also</u>
22  RT 1896-97 (trial court's summary for the jury the individual charges by date and
23  victim)); rather, petitioner challenges only the sufficiency of the identity evidence
24  to support his robbery convictions for December 21 and 22, 2008, and the
25  evidence that a principal used a firearm during the December 30, 2008 robbery.

26  _____

27        [14]The California standard for determining the sufficiency of evidence to support a
    conviction is identical to the federal standard enunciated by the United States Supreme Court in
28  <u>Jackson</u>. <u>People v. Johnson</u>, 26 Cal. 3d 557, 576 (1980).

1  See Petition at 31-40 (discussing the various inconsistencies in the victims'

2  testimony).

3          **2.    Analysis**

4          Petitioner essentially argues that the victims' identifications of him were too

5  unreliable and insubstantial to support his conviction because:  (1) none of the

6  victims from December 21, 2008 (Velasquez, Cervantes, and Dominguez)

7  identified petitioner in court as one of the robbers (Petition at 33-34);

8  (2) Velasquez and Cervantes both testified that the robber who entered the trailer

9  on December 21, 2008 had a tattoo on his neck (as reported to Officer Le), and

10 petitioner did not have any tattoos (Petition at 33-35); (3) while Dominguez

11 identified petitioner's photograph from a lineup prior to trial as one of the men

12 who robbed him on December 21, 2008, Dominguez testified at trial, "This is not

13 the person who robbed me." (Petition at 34 (citing RT 1570)); (4) as to the

14 December 22, 2008 robbery, Velasquez testified that the robber was the same man

15 who robbed the truck the day before, and again Velasquez did not identify

16 petitioner in court as the December 21 or 22, 2008 robber, whereas he identified

17 petitioner as committing the December 30, 2008 robbery (Petition at 35-36);

18 (5) the only victim to testify that petitioner committed the December 22, 2008

19 robbery was Mojica, whose testimony was "confused," (*e.g.*, Mojica did not

20 correctly recall who was working with him that night) (Petition at 37-38).

21 Petitioner also argues that Mojica's testimony, which provided the only evidence

22 that a robber was armed on December 30, 2008, was conflicting because Mojica

23 testified first that a gun was used, and later that he did not see a gun.  (Petition at

24 39-40).

25         These arguments were already made to, and rejected by, the jury at trial.

26 (See RT 1947-61 [petitioner's counsel's closing argument re same]; RT 1967-78

27 [Rodriguez's counsel making similar argument in closing]).  In presenting these

28 arguments again, petitioner essentially is asking this Court to reweigh the

14

1    evidence.  However, the Court may not do so on federal habeas review.  <u>See</u>
2    <u>Cavazos</u>, 132 S. Ct. at 7 n.* (reweighing facts precluded by <u>Jackson</u>); <u>United</u>
3    <u>States v. Nevils</u>, 598 F.3d 1158, 1170 (9th Cir. 2010) (in assessing sufficiency of
4    the evidence claim, it is not court's function to reweigh the evidence) (citation and
5    quotation marks omitted).  The only issue before this Court is whether it was
6    objectively unreasonable for the California courts to determine that a rational trier
7    of fact could have found beyond a reasonable doubt that petitioner committed the
8    December 21 and 22 robberies, and that a principal used a firearm during the
9    December 30 robbery.  In this case, such question must be answered in the
10   negative.

11        Once again, petitioner does not deny that he robbed Mojica on December
12   30, 2008.  (Traverse at 3).  Identity is not an issue for this robbery.  As
13   summarized above, Mojica positively identified petitioner as the man who robbed
14   him on December 22 and 30, 2008, and testified that petitioner used a gun both
15   times.  Velasquez, the only victim present for all three robberies, testified that the
16   same two men who robbed him on December 21, 2008, returned on December 22,
17   2008 and robbed the trailer again.  Velasquez said the same man who entered the
18   trailer on December 21 robbed the trailer on December 22 with a gun.  While
19   Velasquez, Cervantes, and Dominguez, each denied in court that petitioner was
20   one of the robbers on December 21, 2008, Dominguez (who was only present for
21   the December 21, 2008 robbery) had identified petitioner's photograph as looking
22   similar to one of the robbers, noting he recognized the person "100 percent."

23        Based on this evidence, a rational trier of fact could agree with petitioner's
24   jury that petitioner committed all three robberies and that a principal used a
25   firearm during each one.  As the Court of Appeal noted, "[i]dentification of the
26   defendant by a single eyewitness may be sufficient to prove the defendant's
27   identity as the perpetrator of a crime."  <u>People v. Boyer</u>, 38 Cal. 4th 412, 480
28   (2006) (citations omitted), <u>cert. denied</u>, 549 U.S. 1021 (2006); <u>United States v.</u>

1   Larios, 640 F.2d 938, 940 (9th Cir. 1981) ("The testimony of one witness . . . is

2   sufficient to uphold a conviction."); United States v. Jones, 425 F.2d 1048, 1055

3   (9th Cir.) ("[I]n this circuit, . . . the testimony of one witness, if believed, is

4   sufficient to prove a fact.") (citation omitted), cert. denied, 400 U.S. 823 (1970);

5   see also United States v. Foster, 243 Fed. Appx. 315, 316 (9th Cir. 2007) (even

6   testimony of one witness, if believed, sufficient to support conviction; resolution

7   of any question as to credibility properly entrusted to jury).  Moreover, "testimony

8   that a defendant resembles the robber, or looks like the same, has been held

9   sufficient."  People v. Jackson, 183 Cal. App. 2d 562, 568 (1960) (internal

10  citations omitted); see also United States v. Smith, 563 F.2d 1361, 1363 (9th Cir.

11  1977) (statement that defendant "look[ed] like" the perpetrator sufficient), cert.

12  denied, 434 U.S. 1021 (1978).

13       Although petitioner points to discrepancies in the testimony and evidence, it

14  was the province of the jury to credit the evidence showing that petitioner was the

15  robber and that a principal used a firearm.  See United States v. Ginn, 87 F.3d 367,

16  369 (9th Cir. 1996) ("The evidence is not rendered insufficient simply because

17  there are discrepancies in the eyewitnesses' descriptions of the robber."); People v.

18  Jackson, 183 Cal. App. 2d at 568 ("The uncertainty of recollection, qualification

19  of identity and lack of positiveness in the testimony of the several witnesses

20  complained of by appellant were matters going to the weight of the evidence and

21  the credibility of witnesses and for the observation and consideration, and directed

22  solely to the attention of, the jury in the first instance. . . .").  A jury's credibility

23  determinations are "entitled to near-total deference under Jackson [v. Virginia]."

24  Bruce v. Terhune, 376 F.3d 950, 957-58 (9th Cir. 2004) (citations omitted)

25  (federal habeas court could not revisit jury's resolution of inconsistencies between

26  victim's account and those of other witnesses, and victim's account was not

27  "wholly incredible").  Notwithstanding petitioner's assertions to the contrary, this

28  ///

16

1  Court cannot say that the California courts' deference to the jury's findings was
2  objectively unreasonable.

3       As the California courts reasonably determined that the evidence of identity
4  and use of a firearm was constitutionally sufficient to support the challenged
5  robbery convictions and true finding on the challenged firearm enhancement,
6  petitioner is not entitled to federal habeas relief on this claim.

7       **B.   Petitioner's Jury Instruction Claim Does Not Merit Habeas Relief**

8       Petitioner complains that the trial court improperly instructed the jury with
9  CALJIC 4.71.  The Court of Appeal issued the last reasoned decision addressing
10 the merits of this claim, reasonably rejecting it on direct appeal.   (Lodged Doc. 8
11 at 10-17).  Accordingly, this claim does not merit federal habeas relief.

12       **1.   Background**

13      The Information charged petitioner with committing robberies against the
14 named victims "on or about" December 21, 22, and 30, 2008.  (CT 88-92; see also
15 RT 1896-97 [trial court instructing jury re same]).  Prior to the close of the
16 prosecution's case, the trial court indicated outside the presence of the jury its
17 intent to instruct the jury with CALJIC 4.71, which provides that proof that a
18 crime was committed need not show that it was on a precise date, because
19 Mojica's testimony was not clear as to the exact day that the last robbery occurred.
20 (RT 1531).  The trial court proposed that it also give CALJIC 17.01, a unanimity
21 instruction, which would require the jury to unanimously agree as to the offense
22 that forms the basis for a specific count.  (RT 1531, 1833).

23      Petitioner's counsel represented that he could clarify the dates and avoid
24 any confusion by having the responding police officers testify about the dates they
25 responded to the crimes, which were the same day the crimes occurred.  (RT 1532-
26 33).  Counsel requested that the "on or about" evidence language be stricken from
27 the instructions because it would be clear what dates the parties were referencing.
28 (RT 1533).  The trial court responded that it may be a solution to not instruct with

CALJIC 4.71 and 17.01 if the evidence became clear as to the dates of the alleged crimes.  (RT 1533; see also RT 1833-42 [further discussion regarding these jury instructions]).

As noted above, in petitioner's defense, his counsel presented officers who testified to responding to the December 21 and 22, 2008 robberies, but not to the December 30, 2008 robbery.  When the subject of giving CALJIC 4.71 and 17.01 resumed after the close of petitioner's evidence, the trial court indicated it would give such instructions and a modified version of CALJIC 2.50, as addressing the state of the evidence.  (RT 1864-65).  Petitioner's counsel objected to the giving of CALJIC 4.71, but agreed with giving the modified CALJIC 2.50 instruction, and did not object to CALJIC 17.01.  (RT 1866-67).

In accordance with its ruling, the trial court instructed the jury in pertinent part:

> [CALJIC 4.71]  When, as in this case, it is alleged that the crime charged was committed "on or about" a certain date, if you find that the crime was committed, it is not necessary that the proof show that it was committed on that precise date; it is sufficient if the proof shows that the crime was committed on or about that date.
>
> * * *
>
> [CALJIC 2.50]  Evidence has been introduced for the purpose of showing that a defendant may have committed a crime other than that for which he is on trial. . . .  This evidence, if believed, may not be considered by you to prove that either defendant is a person of bad character or that either defendant has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show:  ¶ The existence of the intent which is a necessary element of the crimes charged; ¶ The identity of the person who committed the crimes charged; ¶ A motive for the

commission of the crimes charged. . . .  <u>You are not permitted to</u>
<u>consider such evidence for any other purpose.</u>

* * *

[CALJIC 17.01]  Defendants Macias and Rodriguez are
accused in Counts 1 through 8 of the Information of having
committed specific crimes against named victims on or about certain
dates.  The prosecution has introduced evidence for the purpose of
showing that there is more than one act upon which a conviction on
Counts 1 through 8 may be based.  Defendants Macias and Rodriguez
may be found guilty if the proof shows beyond a reasonable doubt
that the particular defendant committed any one or more of the acts.
<u>However, in order to return a verdict of guilty as to a charged crime,</u>
<u>all jurors must agree that the particular defendant committed the same</u>
<u>act.</u>  It is not necessary that you state in your verdict the particular act
upon which you have reached agreement.

(RT 1898, 1902-03, 1925-26 (emphasis added); <u>see also</u> CT 193-94, 200 (written
instructions)).

During deliberations, the jury made several requests.  (CT 205-06, 216, and
218).  They first requested the testimony of all the victims and an English
translation of the photographic identification statements.  (CT 205).  Four hours
later, the jury requested "the dates the witnesses/victims [Mojica, Velasquez,
Dominguez, and Cervantes] saw the suspects at the Mojica taco trailer [12/21/09
[sic], 12/22/09 [sic], 12/30/09 [sic]]," asking "Did each of these witnesses see or
not see Suspect 1 or Suspect 2 on 12/21, 12/22, or 12/30?"  (CT 206).  The trial
court responded by advising the jury that it was "to decide the facts based upon all
of the evidence.  ¶ If you have any specific request for information and/or
readback, please notify the Court."  (CT 207; <u>see also</u> RT 2402-04 (discussing
same)).  On the next morning of deliberations, the jury asked, "What does 'on or

1  about' mean exactly regarding the counts/charges for these suspects?" (CT 216).

2  The trial court responded, "The phrase 'on or about' is defined in Instruction 4.71.

3  You should review that instruction as well as Instruction 17.01." (CT 217; see

4  also RT 2405-06 [discussing same]).  The jury also asked for a reading of

5  Cervantes' testimony.  (CT 218).  The jury reached its verdict within two hours of

6  the last two requests.  (See RT 2405-06 [showing timing of requests and verdict]).

7  The verdict forms are worded, in relevant part:  "We, the jury. . . find defendant,

8  [name] guilty, of the crime of robbery in the second degree. . ., alleged victim

9  [name], alleged date of [December 21, 2008 or December 22, 2008 or December

10  30, 2008], as charged in Count [number] of the Information." (CT 219-26

11  [forms]).

12  ## 2.   Pertinent Law

13     In a criminal trial, the State must prove every element of the offense.

14  Middleton v. McNeil, 541 U.S. 433, 437 (2004).  A jury instruction violates due

15  process if it fails to give effect to that requirement.  Id. (citing Sandstrom v.

16  Montana, 442 U.S. 510, 520-21 (1979)).

17     Federal habeas relief based upon a claim of instructional error is available

18  only when a petitioner demonstrates that "[an] ailing instruction by itself so

19  infected the entire trial that the resulting conviction violates due process." Estelle

20  v. McGuire, 502 U.S. 62, 72 (1991); see also Waddington v. Sarausad, 555 U.S.

21  179, 191 (2009) (same) (citations omitted).  A challenged instruction must be

22  evaluated in the context of other instructions and the trial record as a whole, not in

23  artificial isolation.  Waddington, 555 U.S. at 191 (citations omitted).

24     If a jury instruction is ambiguous, inconsistent or otherwise deficient, it will

25  violate due process only when a reasonable likelihood exists that the jury has

26  applied the challenged instruction in a manner that violates the Constitution.

27  Waddington, 555 U.S. at 190-91; Estelle, 502 U.S. at 72.  It is not enough that

28  ///

1   there is some "slight possibility" that the jury misapplied the instruction. Weeks v.
2   Angelone, 528 U.S. 225, 236 (2000).

3        Errors in jury instructions are subject to harmless error analysis and do not
4   merit habeas relief unless such error had a substantial and injurious effect or
5   influence in determining the jury's verdict. Hedgpeth v. Pulido, 555 U.S. 57, 61-
6   62 (2008) (per curiam) (citing Brecht v. Abrahamson, 507 U.S. 619, 623 (1993)).
7   Similarly, where a state court has determined that a constitutional error is
8   harmless, a federal habeas court may not grant relief unless the error had a
9   substantial and injurious effect on the outcome. See Merolillo v. Yates, 663 F.3d
10  444, 454-55 (9th Cir. 2011), cert. denied, 133 S. Ct. 102 (2012).

11        **3.   Analysis**

12        Petitioner contends that instructing with CALJIC 4.71 violated his due
13  process and fair trial rights because the jury could have found him guilty of
14  committing the December 30, 2008 robbery based on evidence of uncharged acts –
15  specifically, Mojica's testimony that (1) petitioner had taken food from the trailer,
16  without paying, close in time to the charged robberies, and (2) he observed a
17  robbery the day before the last robbery (i.e., on December 29, 2008) from his car –
18  acts which petitioner claims occurred on dates "other than those fixed by the
19  prosecution and relied upon by counsel in preparing the defense case."  (Petition at
20  41-43; see also RT 3006-10 [petitioner's counsel arguing same in new trial
21  motion, suggesting prejudice from a lack of notice of the uncharged acts]; RT
22  3017-18 [trial court denying new trial motion]; CT 256-70 [new trial motion]).

23        The California Court of Appeal rejected this claim, finding that no
24  prejudicial error occurred.  (Lodged Doc. 8 at 13-17).  This Court agrees.
25  Petitioner has not shown any harm from instructing with CALJIC 4.71.

26        Any uncertainty from Mojica's testimony about the date of the last robbery
27  was addressed by Officer Abarca's testimony (as part of the prosecution's case),
28  that the officer responded to the trailer regarding a robbery report on December

30, 2008, and was provided a license plate number by Mojica. (RT 912-14).
Given: (a) Officer Abarca's testimony, (b) the instructions to the jury as to the
limited purpose to which they could consider other crimes evidence, (c) the jury's
question about whether the witness victims saw the suspects specifically on the
dates charged and argued (*i.e.*, December 21, 22, and 30), and (d) the verdict forms
which provided the crimes occurred on December 21, 22, and 30, 2008, as
charged, it is not likely that the jury applied CALJIC 4.71 to find petitioner guilty
of the December 30, 2008 robbery of Mojica based on finding that petitioner
engaged in any other criminal activity between December 22 and 30, 2008.

Moreover, as the Court of Appeal noted, the other crimes evidence that
petitioner claims could have been used to find he committed the December 30,
2008 robbery does not fit with the charge or verdict forms. (See Lodged Doc. 8 at
13-16). The December 30, 2008 charge involved robbing Mojica with the
personal use of a firearm. (See RT 1897-98 [summary of charges]). There is no
reasonable likelihood that the jury misapplied the instructions to Mojica's
testimony that he was not working and sitting in his car the day before the last
robbery (*i.e.*, December 29), and observed a person who was not carrying a gun
approach the emergency window then leave after robbing Cervantes (and not
Mojica), to find petitioner guilty of robbing Mojica on December 30, 2008. Nor is
there a reasonable likelihood that the jury misapplied the instructions to find
petitioner guilty of robbing Mojica with personal use of a firearm from Mojica's
testimony that petitioner had taken food without paying close in time to the
charged robbery when, as petitioner acknowledges (Petition at 38), Mojica said
petitioner was never armed when he simply took food.

In light of the foregoing, the California Court of Appeal's rejection of
petitioner's jury instruction claim was not contrary to, or an unreasonable
application of, any clearly established federal law, and did not constitute an
///

unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

## VI.   CONCLUSION

IT IS THEREFORE ORDERED that:  (1) the Petition is denied and this action is dismissed with prejudice; and (2) the Clerk shall enter judgment accordingly.

IT IS SO ORDERED.[15]

DATED:  December 30, 2014

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

_____

[15]Petitioner is not entitled to an evidentiary hearing in this case.  Petitioner has not alleged any material fact, which he did not have a full and fair opportunity to develop in state court, and which, if proved, would show petitioner's entitlement to habeas relief.  See Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (scope of record for 28 U.S.C. § 2254(d)(1) inquiry limited to record that was before state court that adjudicated claim on the merits); Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if record refutes applicant's factual allegations or otherwise precludes habeas relief, court not required to hold evidentiary hearing); Gandarela v. Johnson, 286 F.3d 1080, 1087 (9th Cir. 2002) (evidentiary hearing properly denied where the petitioner "failed to show what more an evidentiary hearing might reveal of material import"), cert. denied, 537 U.S. 1117 (2003).